**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JENNIFER LAMAR<br>5884 Chatford Drive Apt. G<br>Columbus, Ohio 43232<br>    Plaintiff,<br><br>  v.<br><br>AMAZON.COM SERVICES LLC<br>1550 W Main Street<br>West Jefferson, Ohio 43162<br><br>**Serve Also:**<br>Amazon.com Services LLC<br>Corporation Service Company<br>3366 Riverside Drive, Suite 103<br>Upper Arlington, Ohio 43221<br><br>    Defendant. | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED<br>HEREIN** |

Plaintiff, Jennifer Lamar, by and through undersigned counsel, as her Complaint against Defendant Amazon.com Services LLC ("Amazon"), states and avers the following:

**PARTIES, JURISDICTION, AND VENUE**

1. Lamar is a resident of the city of Columbus, Franklin County, Ohio.

2. Amazon is a foreign limited liability company, organized under the laws of the State of Delaware.

3. Amazon's principal place of business is located in Seattle, Washington.

4. Amazon does business at 1550 W Main Street, West Jefferson, Madison County, Ohio 43162.

5. Amazon is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq.*

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.

7. The material events alleged in this Complaint occurred in Licking County and Madison County, Ohio.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9. Within two years of the conduct alleged below, Lamar filed Charges of Discrimination with the Ohio Civil Rights Commission ("OCRC"), Charge Nos. COLB1(49073)10132021;22A-2022-0278C and COLB1(49153)11192021;22A-2022-00574C ("Lamar OCRC Charges").

10. Lamar received her Right to Sue letter from the OCRC regarding the Lamar OCRC Charges, which have been attached as Exhibits A and B.

11. Lamar has properly exhausted her administrative remedies pursuant to R.C. § 4112.052.

## FACTS

12. In or about August 2017, Lamar started working for Amazon.

13. Initially, Amazon employed Lamar as an entry-level associate.

14. Lamar has fibromyalgia, depression, anxiety, and foraminal stenosis ("Lamar's Conditions").

15. Lamar's Conditions are physical and/or mental impairments.

16. Because of Lamar's Conditions, Lamar is significantly limited in one or more major life activities, including standing, walking, and lifting.

17. Lamar has a record of physical and/or mental impairment.

18. Because of Lamar's Conditions, Amazon perceived Lamar as disabled.

19. In or about July 2019, Lamar requested an accommodation of no twisting because of Lamar's Conditions.

20. In or about February 2020, Amazon placed Lamar in the position of transportation associate.

21. On or about April 20, 2020, Lamar was injured at work.

22. On or about April 20, 2020, an Amazon tractor trailer injured Lamar's back, neck, shoulder, and hip.

23. On or about April 20, 2020, Lamar reported the tractor incident to Amazon and went home early.

24. On or about April 21, 2020, Lamar reported her injuries to Amazon.

25. On or about April 28, 2020, Lamar requested that Amazon accommodate Lamar's Conditions by allowing her not to drive a trailer ("2020 Accommodation Request").

26. Amazon initially approved the 2020 Accommodation Request.

27. On or about May 30, 2020, Amazon stopped permitting Lamar not to drive a trailer.

28. In or about April 2021, Amazon placed Lamar in the position of Social Distancing Process Assistant.

29. Lamar was qualified for the Social Distancing Process Assistant position.

30. With or without reasonable accommodation, Lamar could perform the essential functions of the Social Distancing Process Assistant position at Amazon.

31. On or about June 29, 2021, Lamar received medical recommendations from her doctor ("Lamar's Medical Recommendations").

32. Lamar's Medical Recommendations included no sitting for more than six hours.

33. Lamar's Medical Recommendations included no walking for more than an hour a day.

34. Lamar's Medical Recommendations included limits on twisting and bending.

35. Lamar's Medical Recommendations included limits on her range of motion.

36. Lamar's Medical Recommendations included limits on lifting.

37. On or about July 14, 2021, Amazon eliminated the Social Distancing Process Assistant position.

38. In or about July 2021, Lamar requested that Amazon accommodate Lamar's Conditions by permitting her to perform work that did not require heavy lifting ("2021 Request for Accommodation").

39. Amazon had work available that did not require heavy lifting.

40. Amazon could have granted the 2021 Request for Accommodation without undue burden on the company.

41. The 2021 Request for Accommodation was reasonable.

42. Amazon denied the 2021 Request for Accommodation.

43. On or about August 6, 2021, Amazon offered Lamar a position as a Process Assistant in the Pack Singles department.

44. The Process Assistant position required heavy lifting, which violated the lifting restrictions on Lamar's Medical Recommendations.

45. In or about September 2021, Amazon placed Lamar on a leave of absence.

46. Lamar did not request a leave of absence.

47. In or about September 2021, Lamar was able to work with reasonable accommodation.

48. In or about September 2021, instead of accommodating Lamar, Amazon placed Lamar on a leave of absence for almost a year.

49. For almost a year, Amazon kept Lamar on a leave of absence.

50. For almost a year, Amazon kept Lamar on a leave of absence when she was qualified to perform positions at Amazon.

51. For almost a year, Amazon kept Lamar on a leave of absence because of Lamar's Medical Recommendations.

52. For almost a year, Amazon stopped putting Lamar on the work schedule.

53. For almost a year, Amazon kept Lamar on a leave of absence in discrimination against Lamar because of her disabilities.

54. For almost a year, Amazon kept Lamar on a leave of absence in retaliation for Lamar's Report.

55. On or about July 9, 2022, Amazon terminated Lamar's employment ("Termination").

56. On or about July 9, 2022, Amazon informed Lamar of the Termination via email.

57. Amazon has a progressive disciplinary policy ("Discipline Policy").

58. A verbal warning is the lowest level of discipline in the Discipline Policy.

59. Lamar did not receive a verbal warning before the Termination.

60. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

61. Lamar did not receive a written warning before the Termination.

62. A termination is the highest level of discipline in the Discipline Policy.

63. Amazon knowingly skipped progressive disciplinary steps in effectively terminating Lamar's employment.

64. Amazon knowingly terminated Lamar's employment.

65. Amazon knowingly took an adverse employment action against Lamar.

66. Amazon knowingly took an adverse action against Lamar.

67. Amazon intentionally skipped progressive disciplinary steps in terminating Lamar's employment.

68. Amazon intentionally terminated Lamar's employment.

69. Amazon intentionally took an adverse employment action against Lamar.

70. Amazon intentionally took an adverse action against Lamar.

71. Amazon knew that skipping progressive disciplinary steps in terminating Lamar's employment would cause Lamar harm, including economic harm.

72. Amazon knew that terminating Lamar's employment would cause Lamar harm, including economic harm.

73. Amazon willfully skipped progressive disciplinary steps in terminating Lamar's employment.

74. Amazon willfully terminated Lamar's employment.

75. Amazon willfully took an adverse employment action against Lamar.

76. Amazon willfully took an adverse action against Lamar.

77. On or about July 9, 2022, Amazon gave Lamar the Termination because of her disability.

78. On or about July 9, 2022, Amazon gave Lamar the Termination because of her perceived disability.

79. On or about July 9, 2022, Amazon gave Lamar the Termination in retaliation for her requesting a disability accommodation.

80. On or about July 9, 2022, Amazon gave Lamar the Termination in retaliation for her opposing discrimination.

81. As a direct and proximate result of Amazon's conduct, Lamar suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

82. Lamar restates each and every prior paragraph of this complaint, as if it were fully restated herein.

83. On or about June 29, 2021, Lamar received medical recommendations from her doctor.

84. In or about August 2021, instead of accommodating Lamar, Amazon placed Lamar on a leave of absence for almost a year.

85. For almost a year, Amazon kept Lamar on a leave of absence.

86. For almost a year, Amazon kept Lamar on a leave of absence when she was qualified to perform positions at Amazon.

87. For almost a year, Amazon kept Lamar on a leave of absence because of Lamar's Medical Recommendations.

88. For almost a year, Amazon stopped putting Lamar on the work schedule.

89. For almost a year, Amazon discriminated against Lamar because of her disabilities.

90. Amazon unlawfully discriminated against Lamar because of her disabilities.

91. On or about July 9, 2022, Amazon terminated Lamar's employment ("Termination").

92. As a direct and proximate result of Amazon's conduct, Lamar suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT II: RETALIATION UNDER R.C. § 4112.02(I)

93. Lamar restates each and every prior paragraph of this complaint, as if it were fully restated herein.

94. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice to retaliate against an employee for requesting a disability accommodation.

95. In or about July 2021, Lamar made the Request for Accommodation.

96. Subsequent to the Request for Accommodation, Amazon stopped scheduling Lamar to work.

97. Subsequent to the Request for Accommodation, Amazon forced Lamar on leave.

98. Subsequent to the Request for Accommodation, Amazon terminated Lamar's employment.

99. Amazon violated R.C. § 4112.02(I) when Amazon terminated Lamar's employment.

100. As a direct and proximate result of Amazon's violation of R.C. § 4112.02(I), Lamar suffered and will continue to suffer damages.

101. As a direct and proximate result of Amazon's conduct, Lamar suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Lamar respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

    (i) Requiring Amazon to abolish discrimination, and retaliation;

    (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v) Requiring mandatory and effective training for all employees and supervisors on discrimination and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Amazon to restore Lamar to one of the positions to which she was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(c) An award against Defendant of compensatory and monetary damages to compensate Lamar for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Lamar claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (614) 683-7331
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
Email: paul.filippelli@spitzlawfirm.com
*Attorneys for Plaintiff Jennifer Lamar*

## JURY DEMAND

Plaintiff Lamar demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
**SPITZ, The Employee's Law Firm**